**Bud BRANDEBERRY, Plaintiff,**

v.

**Herbert GOODPASTER and Vionne L. Goodpaster, Defendants.**

**Civ. No. 68–107.**

United States District Court
W. D. Oklahoma.

Aug. 22, 1969.

Don R. Nicholson II, and David Pomeroy, Oklahoma City, Okl., for plaintiff.

Richard L. Bohanon, Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

In this case the Plaintiff sues the Defendants for the unpaid balance due on a promissory note dated July 22, 1960 and signed by the Defendants and others to the Plaintiff as payee. This note and another note, not sued on herein, were part of an over-all transaction in which the Plaintiff, the Defendants and others formed a company known as BGM Industries, Inc. (BGM) to manufacture golf carts. To finance this effort the notes mentioned were signed by the Defendants and others to the Plaintiff as payee, who in turn negotiated them to the Russell State Bank, Russell, Kansas. On these notes and other security furnished by the Plaintiff, this bank advanced a line of credit of around $90,000.-00 to the golf cart company. As some of the organizers of BGM, the Defendants received a portion of the preferred and common stock of said company. They pledged the same to the Plaintiff, with power of attorney, as security for the two notes above mentioned. In March of 1961, the Defendants sold all of their preferred stock and one-half of their common stock to one Sutliff, the proceeds of this sale of their stock being applied toward the aforementioned notes then in the hands of the Russell State Bank.

Thereafter, the Defendant Herbert Goodpaster suggested that Southwest Factories, Inc. (SWF) acquire all BGM stock. This was accomplished by a written agreement on December 1, 1961, between SWF and the stockholders of BGM, with the Defendant Herbert Goodpaster signing the same as owner of 281⅝ shares of BGM common stock. Consideration for the BGM stock was not immediately due under the agreement or paid and SWF getting into financial difficulty became involved in a Chapter X Bankruptcy Reorganization proceeding. In this proceeding, the amount owed BGM preferred stockholders by SWF under the above mentioned Stock Purchase Agreement was the subject of a claim filed in the Chapter X proceeding. The holders of common stock of BGM did not file a claim. The Defendants only owned common stock and, thus, had no claim against SWF. A trial was had in connection with the said claim of the preferred stockholders and it was eventually settled in December 1962 on the basis that certain agreed payments would be made by SWF for all outstanding stock of BGM, both preferred and common stock. SWF eventually, in 1963 and 1964, paid a total of approximately $25,000.00 pursuant to the settlement. That portion thereof which was payable to the signers of the aforementioned note who then held preferred stock was applied by them toward the said notes and that portion of the payment payable to preferred stockholders who did not sign the aforementioned notes was paid to and retained by these preferred stockholders. Only the preferred stockholders received any of this money even though it was necessary to the settlement that SWF get all BGM stock, both preferred and common. The Defendants, therefore, received no money from SWF.

On April 30, 1963, Russell State Bank, as holder of the said notes, brought suit

against Sherman Markman and wife, other signers of said notes, for the balance due on the same and by suit and garnishment was able to obtain from the Markmans certain moneys which were received on or before November 22, 1966, and applied against the aforementioned notes in the hands of Russell State Bank. After or as the foregoing efforts were being accomplished, the Plaintiff in some manner satisfied the balance due on the notes held by Russell State Bank. This, apparently, satisfied in full the earlier note not sued on herein but left a balance due on the note sued on herein in the amount claimed in this action. Upon satisfying the Bank, the Bank delivered the notes to the Plaintiff and, as stated above, Plaintiff now seeks to recover the balance due on the last of the two notes from the Defendants as signers of the note. It is not believed that there is any dispute about the foregoing recitation of events involved in this litigation, except as to the position of Defendants that they were only accommodation signers of the notes.

By way of defense, the Defendants admit that they executed the note involved but deny all other allegations. Specifically, they deny that the action set forth in this case accrued within five years before the commencement of this action, and, therefore, is barred by limitations. The Defendants further assert that they executed the note sued on herein only as accommodation makers for the sole purpose of lending their credit to Plaintiff in order to assist him in obtaining financing for BGM. In this connection, Defendants admit that they were to have and receive 3% of the stock of BGM, but claim that they were not to be liable for more than 3% of the amount of the said two notes. Further, the Defendants state that when they released all of their stock or subscription rights in BGM that they were released from any liability to the Plaintiff. Lastly, the Defendants allege that in the action on the said two notes by the Russell State Bank against the Markmans, co-signers of the notes, the case went to judgment and eventually the judgment was satisfied and released which acts discharge the Defendants from any liability on the note.

The parties waived jury trial and the matter was tried to the Court. Several legal propositions have been briefed by the parties.

The Court finds and concludes from the evidence and applicable law that the Plaintiff may not recover herein, inasmuch as his action against the Defendants is barred by limitations. The Defendants have raised defensively the bar of limitations in this case. In this connection, the Court finds that the note sued on was dated July 22, 1960. The Defendants themselves made no payments on the note involved herein, except possibly the application on this note of receipts from the sale by the Defendants of all of their preferred stock and one-half of their common stock to Sutliff. This occurred in March of 1961. This action was filed on March 13, 1968. The parties have stipulated that the law of Kansas applies to this litigation. Also, they have stipulated that Kansas has a five-year limitations statute on a note. Kansas Statutes Annotated, 60–511. The parties have further stipulated that the burden is on the Defendants to establish the bar of limitations and the burden is on the Plaintiff to establish a tolling of the five-year statute. Under the evidence, Plaintiff's action is barred by said limitations statute inasmuch as the last payment on said note which could be charged to the Defendants was made in March 1961, unless payments on the note involved made later by co-signers or joint debtors thereof are chargeable against the Defendants and would constitute a tolling of the statute as to the Defendants or a starting date attributable to the Defendants for the application of the Kansas five-year limitations statute within said five-year period before this action was filed.

On this point, as to the effect of payment by a joint debtor, Kansas Statutes Annotated, 60–520 provides as folows:

"60–520. *Part payment or acknowledgment of liability.* (a) *Effect.* In

any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same, shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby.

(b) *Joint debtors.* It there be two or more joint contractors, no one of whom is entitled to act as the agent of the others, no such joint contractor shall lose the benefit of the statute of limitations so as to be chargeable by reason of any acknowledgment, promise or payment made by any other or others of them, unless done with the knowledge and consent of, or satisfied [ratified] by the joint contractor sought to be charged."

In this connection, there is no evidence to the effect that the Markman payments on the note in 1966 and made within five years of the date this action was filed were done with the knowledge and consent of or were ratified by the Defendants within the contemplation of the above statute. It is not understood that the Plaintiff so contends. Attention is, therefore, given to the payments applied to the note as a result of the BGM-SWF settlement in connection with the Chapter X Bankruptcy Reorganization, the last of which payments was made in 1964 and, thus, within five years prior to the filing of this action.

As stated above, the burden to establish a tolling of the statute as to these Defendants by payments of co-signers or joint debtors rests with the Plaintiff. From the evidence presented to the Court, the Court finds and concludes that the Plaintiff has failed to sustain this burden and show that any payments on the note resulting from the BGM-SWF settlement were done with the knowledge and consent of the Defendants or were ratified by the Defendants, as provided in the above Kansas statute. As heretofore recited, this claim in the Chapter X Bankruptcy proceeding which resulted in payments through settlement was made only on behalf of the preferred stockholders. The Defendants were not preferred stockholders and, thus, not claimants. It further appears that all parties concerned considered the common stock of BGM to be without value. However, it seems that a requisite of the settlement was that SWF get all the BGM stock, both preferred and common. As to the trial and settlement of the BGM-SWF controversy, the Plaintiff and his son, Norman Brandeberry, came to Oklahoma City from Kansas for the trial. No doubt due to the relationship between Norman Brandeberry and the Defendants, the Plaintiff and Norman Brandeberry stayed at the home of the Defendants during this trial and settlement. The evidence disclosed that the Defendant Herbert Goodpaster attended some or all of the trial proceedings and may have attended some but not all of the conferences in lawyers' offices. But, the record is bare of any evidence which establishes, first, that the Defendants were told or the knowledge was imparted to them that the proceeds of any settlement being effected would be applied against the note involved herein and the record is further bare of any evidence establishing that the Defendants were asked to give or gave consent to the application of such settlement payments on the note. The record is also bare of any evidence indicating that after the application of the settlement proceeds, or a part thereof, toward payment of the note involved herein that the Defendants ratified such action. Ample opportunity was afforded the Plaintiff to present evidence of knowledge and consent or ratification, if the same existed. Upon insistence by the Court, all attorneys involved in said trial and settlement were brought to Court and testified. None of them nor the Plaintiff nor Norman Brandeberry testified that the Defendants were told that the proceeds of the settlement would go

towards satisfaction or partial satisfaction of the notes and that they or either of them consented to the same.

 It can be argued, of course, that the Defendants were aware of previous conduct whereby proceeds from the sale or disposition of the BGM stock issued to signers of the notes had been applied in the past against the indebtedness represented by the notes. This applied to the Defendants' sale of some of their own stock. However, the above statute requires knowledge *and* consent. Knowledge alone is not sufficient. Knowledge *and* consent are both necessary. Mere acquiescence is not deemed sufficient to afford compliance with the requirements of this statute. Moreover, as to the common stock of the Defendants which was transferred to SWF, there is no evidence regarding how it was transferred to SWF, except an exhibit shows it was pledged to the Plaintiff on December 23, 1960 and Plaintiff had a power of attorney with reference to the same and said stock was never in the physical possession of the Defendants. There was no evidence that the Defendants surrendered physical possession of the same or endorsed the same to SWF or otherwise transferred or consented to the transfer of the same to SWF. At most, there was testimony on behalf of the Plaintiff that the Defendant Herbert Goodpaster was told or knew from some of the conferences that all common stock would be transferred to SWF in the settlement. This is mere acquiescence and not sufficient to constitute knowledge and consent as provided in the Kansas statute. The Defendant Herbert Goodpaster denied any knowledge of or consent to the SWF settlement moneys being applied and paid on the notes and testified that he thought all his stock had been sold.

Therefore, the Court concludes that the Defendants' defensive plea of bar by limitations is valid and the Plaintiff has failed to meet his burden of showing that any payments on said note by joint debtors or co-signers thereof with the Defendants were done with the knowledge and consent of the Defendants or were ratified by them. In view of this determination by the Court, it is unnecessary to treat with the other defenses presented by the Defendants.

Judgment should be entered in favor of Defendants dismissing the action of Plaintiff against them.